Minute Order Form (06/97)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 2518 | **DATE** | 4/10/2000 |
| **CASE TITLE** | First Health Group Crop. etc. Vs. United Payors etc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum and Order. Defendant moves for summary judgment on plaintiff's claims for damages relating to the termination of plaintiff's relationship with the Government Employees Hospital Association (GEHA) and with Torrance Memorial Medical Center (Torrence). Both motions are granted. Status hearing set for April 17, 2000 at 9:45am. to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 11 2000 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 210 |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST HEALTH GROUP CORP., a Delaware )
corporation, formerly known as HEALTHCARE)
COMPARE CORP., d/b/a The First Health )
*AFFORDABLE* Medical Networks, )
)
      Plaintiff, )
)
vs. ) No. 96 c 2518
)
UNITED PAYORS & UNITED PROVIDERS, )
INC., a Delaware corporation, etc., et al., )
)
      Defendants. )

## MEMORANDUM AND ORDER

Defendant moves for summary judgment on plaintiff's claims for damages relating to the termination of plaintiff's relationship with the Government Employees Hospital Association (GEHA) and with Torrance Memorial Medical Center (Torrance). Both motions are granted.

Plaintiff bases its claims that defendant is liable for its loss of GEHA business upon a variety of contentions. A recurring theme is that defendant was able to build up a volume of providers and then to offer low rates to GEHA because of provider discounts obtained without any real expense, all because of false advertising. We rejected the false advertising claims in our Memorandum and Order of March 21, 2000, and we continue to reject it here.

Its claim of intentional interference with a contractual relationship requires a showing that GEHA was in breach of its subsisting contract with plaintiff. In support of that claim it advances a number of arguments, some of which are unrelated, or not solely related, to its false advertising claims. One is that defendant contended to GEHA that dealing with it would not



violate GEHA's contractual exclusivity provisions because "shared savings" were not a "financial incentive," although defendant claimed to providers that shared savings were a financial incentive. But plaintiff does not claim that GEHA was in breach (and never so claimed to GEHA) by dealing with plaintiff, even though it provided for shared savings. That is because plaintiff did not believe that shared savings were a financial incentive. Perhaps defendant shared that belief; its contracts referred to shared savings as "incentives of benefits" to a covered person. Perhaps it was somewhat disingenuous by that characterization to providers, although there is nothing to suggest that providers did not understand what was meant by "shared savings." As we explained before, it was an incentive of sorts, but a limited one at best. Certainly GEHA understood what it meant and, as a sophisticated entity, was fully capable of judging whether or not it was a sufficient incentive so as to violate any contractual obligations. Apparently, it concluded, in agreement with plaintiff, that it did not.

We have reviewed the plaintiff's other arguments respecting contractual interference. We are unable to ascertain any actual breaches by GEHA as a result of defendant's inducement, nor has plaintiff ever claimed to GEHA that it was in breach of its agreements with plaintiff. Many of the arguments relate to clearly permissible competitive conduct by defendant.

The main thrust of plaintiff's GEHA damages claim is now based upon a claim of interference with a prospective economic advantage. In short, plaintiff argues that it lost its GEHA business in 1997 because of defendant's wrongful conduct. Its primary emphasis is upon false advertising: false advertising led to defendant's volume of providers at reduced expense to it, thus allowing it to offer to GEHA "unbelievably" low rates. Again, we have

already rejected false advertising as a viable claim. Plaintiff recognizes that GEHA wanted bids based upon capitation, a flat per-member per-month fee, and that it was unwilling to bid on that basis. Plaintiff's negotiator believes, however, that it remained in contention to the end because GEHA continued to negotiate after plaintiff's rejection of capitation as the basis for any bid and because, he says, GEHA's negotiator represented that GEHA was "very close" to a deal in May 1997 (a hearsay declaration in the absence of a contractual commitment). The GEHA negotiator disagrees. His testimony is that they were not in the same ballpark and went on to say that nothing attributable to defendant played a role in GEHA's decision not continue its relationship with plaintiff. We note that speculation by a person as to what someone else thought is indeed a slender reed upon which to rely, Visser v. Packer Engineering Associates, Inc., 924 F.2d 655, 659 (7th Cir. 1991), and that the testimony of the GEHA negotiator, if credible, controls. Walton v. Jennings Community Hospital, Inc., 999 F.2d 277, 283 (7th Cir. 1993). Plaintiff does not directly attack his credibility. But even if GEHA and plaintiff were "very close," they did not reach agreement. Defendant was privileged vigorously to compete for the business, A-Abart Electric Supply, Inc. v. Emerson Electric Co., 956 F.2d 1399, 1405 (7th Cir. 1992), and it did. And we have already considered, and rejected, plaintiff's arguments that defendant did not "fight fair."

The Torrance damage claims fare no better. Plaintiff renegotiated Torrance rates, increasing them, because it either had to agree to increased rates or lose the business. The Torrance hospital witness testified that the renegotiation demand was for two reasons: there had been no increase for more than four years and plaintiff had a reduced number of covered lives (presumably the loss of GEHA business). The first reason obviously has nothing to do

with defendant, and we have concluded that the loss of the GEHA business is not actionable. Further, that same witness testified that defendant had nothing to do with the decision to seek renegotiation of rates. Plaintiff contends, however, that there was a third factor: Torrance was unable to differentiate between directed and non-directed PPOs and therefore wanted uniform rates which were lower than the previous rates. But that assertion arises from a hearsay statement to a plaintiff's employee, is used as a basis for advancing the false advertising claim previously rejected, and even the hearsay statement is not tied to any particular conduct by defendant. And that is not enough.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

April 10, 2000.