Minute Order Form (06/97)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 2518 | **DATE** | 5/1/2000 |
| **CASE TITLE** | First Health Group Corp. etc. Vs. United Payors etc. et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendant has counterclaimed for commercial disparagement and for false advertising. Plaintiff moves for summary judgment, and we grant the motion. Status hearing set for May 12, 2000 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | MAY 0 2 2000 | |
| | Notified counsel by telephone. | | date docketed | 211 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | 00 MAY -1 AM 9:58 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST HEALTH GROUP CORP., a Delaware )
corporation, formerly known as HEALTHCARE )
COMPARE CORP., d/b/a The First Health )
*AFFORDABLE* Medical Networks, )
　)
　　　　　Plaintiff, )
　)
vs. ) No. 96 C 2518
　)
UNITED PAYORS & UNITED PROVIDERS, )
INC., a Delaware corporation, etc., et al., )
　)
　　　　　Defendants. )

DOCKETED
MAY 02 2000

## MEMORANDUM OPINION AND ORDER

In this war between competitors, plaintiff has lost two battles, but in the third battle it is victorious. Defendant has counterclaimed for commercial disparagement and for false advertising. Plaintiff moves for summary judgment, and we grant the motion.

We begin by defining the disputes. It is necessary to do so with some care because the disputes as they have been framed in the memoranda of the parties are far narrower than the disputes as first alleged. Defendant relies upon a series of letters and a fax for its disparagement claims and a press release and a letter, and perhaps another press release, for its false advertising claims. They are as follows:

1. Mass mailings by plaintiff's Lee Dickerson or Dr. Susan Bonslett to providers dated April 24, 1995, August 22, 1995, June 13, 1996, June 27, 1996 and July 9, 1996.

2. A fax sent by Carol J. Conti of *AFFORDABLE* on November 6, 1997, to Hillcrest Medical Center.

3. A press release dated November 26, 1997.

2/11

4. A letter from plaintiff's President and CEO James C. Smith to providers, dated November 15, 1997.

5. A press release dated September 22, 1997.

The commercial disparagement claims rest upon plaintiff's characterization of UP & UP as a "silent PPO." Defendant points out that plaintiff, or at least some of its management, considered it a pejorative term, and it probably has now come to be viewed as pejorative -- as a description of networks that garner discounts for payers who have no rights to them. Indeed, some of plaintiff's management considered a non-directed PPO not to be a PPO at all. However, those subjective impressions are not our concern. Our concern is whether or not a reference to UP & UP as a silent PPO disparaged its services by a false or misleading representation of fact.

Defendant might well have a valid disparagement claim if plaintiff had referred to UP & UP in 1998 as a "silent PPO," without explaining what it meant by the term. But that is not what happened. The first letter upon which defendant relies is from Dickerson to providers on April 24, 1995, where "Silent PPOs" is used as another term for "nondirected networks." It does not refer to UP & UP or its predecessors. The next is a Bonslett letter to providers on August 22, 1995. That letter does not use the term "Silent PPOs." Rather, it refers to defendant as a "non-directed" plan. The third letter, with attachments, is from Dickerson to providers on June 13, 1996. It does not mention UP & UP. The letter is a cover letter for an enclosure of a letter from the Office of Personnel Management and purports "to share information with you about nondirected networks...." The cover letter's reference to some networks as "silent preferred provider vendors" is a quotation from the OPM letter, which uses the terms "silent" and "non-directed" interchangeably. The fourth is another Dickerson

letter two weeks later, on June 27, 1996, to providers not under contract with plaintiff by its prior name. It does not refer to UP & UP. It refers to "Silent" PPOs, but attaches an earlier letter where "Silent" and "nondirected" are used interchangeably. That was followed up by another Dickerson letter to providers not under contract, dated July 9, 1996. Again, it is a cover letter which refers to "Silent" PPOs, with an earlier letter attached. That earlier letter directly discusses America's Health Plan (UP & UP's then name) and does refer to "silent" networks. Again, however, "silent" and "nondirected" are used interchangeably, and a copy of the OPM letter is included. Finally the Conti fax reads as follows:

> Lance - Here's the Tulsa client list and the UP & UP info we discussed. This Silent PPO contract doesn't help your cause with our negotiations, but we'll work through it. Carol.

Attached to the fax is the Tulsa client list and a copy of the OPM letter, obviously the "UP & UP info we discussed." Again, the reference to UP & UP as a silent PPO is in the context of the OPM letter use of the term.

The scope of the concept of commercial disparagement in Illinois is unclear. Illinois may or may not recognize such a common law concept. Becker v. Zellner, 226 Ill.Dec. 175, 184, 684 N.E. 2d 1378, 1387 (Ill. App. 2d Dist. 1997). If it does recognize the concept, then the application of the penumbra of issues surrounding defamation claims is also unclear: whether or not the distinction between *per se* and *per quod* applies, see Barry Harlem Corp. v. Kraff, 210 Ill.Dec. 101, 107, 652 N.E.2d 1077 (Ill.App. 1st Dist. 1995); whether there is a qualified privilege when the remarks are in furtherance of a public or legal interest, Genelco, Inc. v Bowers, 129 Ill.Dec. 733, 737, 536 N.E.2d 783 (Ill.App.1st Dist. 1989) (where the court concluded that there is); and whether or not the innocent construction rule applies. The concept does live on in any event in the Uniform Deceptive Trade Practices Act in 815 ILCS

510/2(8), *see* <u>Unique Concepts, Inc. v. Manuel</u>, 669 F.Supp. 185, 190 (N.D.Ill. 1987), but even there, except for a relaxation in proof of special damages, the application of the defamation penumbra remains unclear.

We need not, however, sort through those concepts. Here, we believe, defendant has not shown that the representations were false or misleading. Plaintiff aggressively marketed its view that directed networks are a far better "buy" than non-directed networks, and that non-directed networks do not deliver enough benefits for the discounts. But that is permissible competitive action. Its references to "silent" PPOs were consistently in the same context as that of the OPM during that time period – that "silent" and "non-directed" were used interchangeably. We are being asked to decide whether representations violate legitimate proprietary interests or are protected competition, to decide where the dividing line between those opposing concepts should be. Commercial disparagement claims should not be used as a means of discouraging vigorous competition and we conclude that we would be doing that if we subscribed to defendant's contentions.

The false advertising claims fare no better. One is based upon a letter to providers and a press release. The letter reads, in relevant part, as follows:

> Dear valued *AFFORDABLE* provider:
> \* \* \* \*
> The significance of this event extends beyond just a name change. It represents the new company we have become. HealthCare COMPARE Corp.'s recent acquisition of First Health, the nation's largest third-party administrator, immediately broadens our business base with an increase of 3.5 million covered lives and adds a claims administration capability that rounds out our network, clinical management, workers' compensation, and risk-based products. The result of all of this is to make COMPARE the first network-based company to offer, in effect, a national HMO\* for self-funded payers.
> \* \* \* \*
> \* HealthCare COMPARE Corp. is not a licensed health maintenance organization and does not have capitated financial arrangements with

> providers. References to "HMO" refer only to the benefit design and features typical of a traditional HMO. The network used is a managed care network.

The press release is substantially similar.

Defendant claims that the reference to COMPARE as an HMO is literally false, because an HMO requires use of a provider within the network and a PPO (and COMPARE) does not. Because it is literally false, defendant need not show significant actual confusion by a survey or otherwise. We do not agree, however, that the reference is literally false. Plaintiff did not represent that it is an HMO, and its disclaimers make clear that it does not purport to be one. So what does "benefit design and features of a traditional HMO" mean? The Wristen deposition is not a model of clarity, but we are confident that the phrase is, at most, a marketing "feel good" expression that is not self-defining, certainly not necessarily in the manner defendant asserts.

The second false advertising claim has more substance. The September 22, 1997, press release announced that COMPARE had entered into an agreement to provide services for, among others, "Educators Mutual Life." That was literally false. While the parties then expected to enter into a contract as of October 1, 1997, they had not yet done so. Indeed, apparently because of Educators Mutual Life's distress at being subpoenaed by defendant in this lawsuit, the contract was not executed until late March. Because it is literally false, is it actionable? We think not. We do not suppose that "literally" extends to "technically" so as to avoid the necessity of proving significant actual confusion if the representation is substantially true. The September 4, 1997, letter from Eric Buck of Educators Mutual to David B. Cooke of COMPARE reflects that the parties had essentially struck a deal and had every expectation of finalizing it in the immediate future. The relevant depositions indicate

that there were some matters that needed to be agreed upon and, we are told, some terms did change before the contract was executed. Perhaps plaintiff could not have compelled Educators Mutual to go through with the relationship if Educators Mutual had balked, *see* A/S Apothekernes Laboratorium v. I.M.C. Chemical Group, Inc., 873 F.2d 155 (7th Cir. 1989), but on September 22, 1997, the parties mutually expected a rapid establishment of that relationship. And that, we believe, is enough to put defendant to its proof that the technical falsity of the representation caused significant actual confusion.

*signature*
JAMES B. MORAN
Senior Judge, U. S. District Court

May 1, 2000.